```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                        HOUSTON DIVISION

H & H HOSPITALITY LLC,          §
                                §
         Plaintiff,             §
                                §
v.                              §      CIVIL ACTION NO. H-10-1886
                                §
DISCOVER SPECIALTY INSURANCE    §
COMPANY,                        §
                                §
         Defendant.             §
```

MEMORANDUM AND ORDER

Pending is Defendant Discover Specialty Insurance Company's Motion for Partial Summary Judgment (Document No. 24). After having reviewed the motion, response, and applicable law, the Court concludes that the motion should be granted.

I. Background

This is a Hurricane Ike insurance dispute. Plaintiff H & H Hospitality LLC ("H & H") was, at the time Hurricane Ike struck Houston in September 2008, the named insured on commercial property insurance policy number D058P03794 (the "Policy") issued by Defendant Discover Specialty Insurance Company ("Discover").[1] H & H owns and operates the Covered Property, a Super 8 Motel located in Spring, Texas ("Property").[2] Strong winds from

---

[1] See Document No. 24, ex. A at UC 10 09 01 00 (Page 3 of 147) [hereinafter "Policy"].

[2] See Document No. 26 at 4.

Hurricane Ike "caused damage to the Hotel, including the loss of part of the roof on one of the buildings to the Hotel."[3] Approximately 40 hotel rooms were rendered unrentable by the storm, mostly in Building 2 where part of the roof blew off, but some of the rooms in Building 1 were also damaged.[4] In spite of the damages sustained, H & H had some undamaged, rentable rooms available in both buildings and kept the property open continuously after the storm. Among its other losses, H & H claims business interruption losses of $293,191.00, of which Discover has paid only $51,971.02.[5]

Discover moves for partial summary judgment on the business interruption claim, contending that it does not apply because H & H never closed the Property and therefore had no "necessary suspension of operations" to trigger coverage under the business interruption provision.[6]

## II.   Summary Judgment Standard

Rule 56(a) provides that summary judgment should be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[3] *Id.* ex. C at 1.

[4] *See* Document No. 26 at 4, and ex. C at 2.

[5] *See* Document No. 26, ex. C at 7.

[6] *See* Document No. 24 at 4.

law." FED. R. CIV. P. 56(a). The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support that fact." FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the

3

underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

### III. Discussion

Under Texas law,[7] insurance policies are subject to the same rules of construction as other contracts. *See* Mid-Continent Cas. Co. v. Swift Energy Co., 206 F.3d 487, 491 (5th Cir. 2000); Balandran v. Safeco Ins. Co. of Am., 972 S.W.2d 738, 740-41 (Tex. 1998). When construing a policy, the Court's primary concern is to give effect to the written expression of the parties' intent. *See* Gonzalez v. Denning, 394 F.3d 388, 392 (5th Cir. 2004); Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994). The policy must be considered as a whole, giving effect to each part, and the

---

[7] It is uncontested that Texas law governs this diversity suit.

4

terms used in the policy must be given their ordinary and generally accepted meaning, unless the policy shows the words were meant in a technical or different sense.  *See* Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co., 99 F.3d 695, 700 (5th Cir. 1996); Balandran, 972 S.W.2d at 741; Forbau, 876 S.W.2d at 133.

"'If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous.'" Gonzalez, 394 F.3d at 392 (quoting Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995)).  "On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent."  J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003).  However, "'[a] contract is not ambiguous merely because the parties to an agreement proffer conflicting interpretations of a term.'"  Gonzalez, 394 F.3d at 392 (quoting Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines, 278 F.3d 494, 497 (5th Cir. 2002)).

The Policy provides:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

    **A.   COVERAGES**

        **1.   Property at Your Premises**

            a.   We will pay for direct physical loss of or damage to Covered Property:

5

        (1)    If caused by or resulting from any of the Covered Causes of Loss. . . .[8]

. . .

**J.  DEFINITIONS**

    2.    "Covered premises" means premises described in the Declarations or in a Schedule of Locations form attached to this Coverage Part.[9]

        . . .

    8.    "Operations" means:

        a.    Your business activities occurring at "covered premises"; and

        b.    The tenantability of the "insured locations."[10]

    . . .

**BUSINESS INCOME COVERAGE FORM**
**(Without Extra Expense)**

**BUSINESS INCOME**

    1.    We will pay the actual loss of Business Income that you sustain during the "period of restoration" because of the necessary suspension of your "operations." The suspension must be caused by or result from direct physical loss of or damage to property at or within 1000 feet of "insured locations."[11]

---

[8] Policy at CL/SP 00 01 12 92 (Page 23 of 147).

[9] *See* Policy at CL/SP 00 01 12 92 (Page 32-33 of 147).

[10] Policy at CL/SP 00 01 12 92 (Page 33 of 147).

[11] Policy at DRE-BI (B) 11-1998 (Page 43 of 147).

Discover contends that "necessary suspension of your 'operations'" means a complete cessation or stoppage of business activities at the covered premises. The "covered premises" are described in the Policy as follows: "Prem. No. 1 - 24903 I-45 North Super 8 Motel Spring [,] County: Montgomery TX 77380."[12] H & H counters that the Court should consider "the nature of the premises at issue" in determining what constitutes a "necessary suspension of operations."[13] H & H argues that, as a hotel with rooms to rent, the business interruption provision should be construed to provide coverage because *some* of its rooms were damaged by the storm and as to those rooms, "their use as a revenue generating good was . . . 'suspended' as a result of Hurricane Ike."[14]

While the Policy does not define "necessary suspension of your operations," courts have interpreted language identical or similar to the clause in this policy to cover the risk of a complete cessation of business activities at the covered premises, which in this case are identified solely as a Super 8 Motel on I-45 in Spring, Texas. *See*, *e.g.*, Quality Oilfield Prods., Inc., v. Mich. Mut. Ins. Co., 971 S.W.2d 635, 639 (Tex. App.--Houston [14th Dist.] 1998, no pet.) ("[W]e find that 'interruption of business' is an unambiguous term meaning 'cessation or suspension of business.'

---

[12] Document 24, ex. "A," at page 19 of 147.

[13] Document No. 26 at 6.

[14] Id. at 7.

Therefore, [plaintiff] was not entitled to business interruption coverage for the work slowdown it experienced . . . ."); Home Indem. Co. v. Hyplains Beef, L.C., 893 F. Supp. 987, 991-93 (D. Kan. 1995), *aff'd*, 89 F.3d 850 (10th Cir. 1996) (holding that the plain meaning of "necessary suspension" requires a "complete cessation" of business operations); Forestview The Beautiful, Inc. v. All Nation Ins. Co., 704 N.W.2d 773, 775 (Minn. App. 2005) (holding that "necessary suspension of operations" means complete cessation of business and that plaintiff resort was not entitled to business interruption coverage because it remained open after four of its twenty cabins were damaged and unrentable due to a storm); Buxbaum v. Aetna Life & Cas. Co., 126 Cal. Rptr. 2d 682, 690-94 (Cal. Ct. App. 2002) ("necessary suspension of operations" means total cessation of business activities instead of a business slowdown such that plaintiff law firm which continued operations at another office was not entitled to business interruption coverage); Am. States Ins. Co. v. Creative Walking, Inc., 16 F. Supp. 2d 1062, 1065-66 (E.D. Mo. 1998) (policy with unqualified language of "necessary suspension" of operations "refers only to a total cessation of business activity" rather than a partial one); *cf.* Apartment Movers of Am., Inc. v. Onebeacon Lloyd's of Tex., No. Civ. A. 3:04-CV-0278-B, 2005 WL 106477, at *3 (N.D. Tex. Jan. 19, 2005) (Boyle, J.), *aff'd*, 170 F. App'x 901 (5th Cir. 2006) (holding that "necessary suspension of your 'operations'" is

unambiguous in that "a business slowdown is not sufficient to invoke coverage under a business interruption policy"); Royal Indem. Ins. Co. v. Mikob Prop., Inc., 940 F. Supp. 155 (S.D. Tex. 1996) (Rosenthal, J.) (holding that apartment complex was not entitled to business interruption coverage on two buildings because "if the insured premises are still operating, the business interruption clause does not cover a decrease in income").

In contrast, courts have construed policy provisions that state "necessary or *potential* suspension" of business operations or "necessary interruption of business, whether total or *partial*" to allow coverage for a partial cessation of business without requiring a total business shut down. *See, e.g.*, Am. Med. Imaging Corp. v. St. Paul Fire and Marine Ins. Co., 949 F.2d 690, 692 (3d Cir. 1991) (holding that a hospital was covered under a policy which provided for coverage in the event of a "necessary or potential suspension" and allowed for coverage up until the hospital resumed "normal operations," where hospital shut down briefly the morning of a fire and quickly resumed scaled-down operations at an alternative site); Studley Box & Lumber Co. v. Nat'l Fire Ins. Co., 154 A. 337, 338 (N.H. 1931) (holding that insured's business was covered as a whole when a fire destroyed a stable and horses used in operating the insured's sawmill business, where policy expressly allowed for partial suspension of business operations); Aztar Corp. v. U.S. Fire Ins. Co., 224 P.3d 960, 966-

67 (Ariz. Ct. App. 2010, rev. denied) (casino was covered for business interruption under "partial suspension" language in policy even though a portion of the casino remained open when one building of casino collapsed, causing a decrease in patronage of the casino); Lite v. Fireman's Ins. Co., 119 A.D. 410, 412-13, 104 N.Y.S. 434 (N.Y. App. Div. 1907) (holding that policy language providing for loss of profits in case of fire damage "without total destruction" should be construed to allow coverage for partial losses). Unlike the above cases containing qualifiers or language modifying "suspension," the Policy here lacks any qualifying clause to cover the risk of "potential" or "partial" suspension. Thus H & H's argument that its policy provides coverage for its reduced business operations, or a partial suspension, lacks support in the plain language of its Policy.[15]

---

[15] Both parties rely on Royal Indemnity Ins. Co. v. Mikob Properties, Inc., 940 F. Supp. 155 (S.D. Tex. 1996) (Rosenthal, J.), to support their respective positions. In Mikob, a fire completely destroyed Building C, one of the buildings in an apartment complex, and Royal paid to the insured the loss of rental income from that fully destroyed building. Buildings A and B sustained only minor damage and were still inhabitable, but the common amenities of the complex could not be used. The policy covered loss of "Business Income . . . due to the necessary suspension of your 'operations' or of tenancy during the 'period of restoration.'" The insured claimed a loss of income under the policy because some tenants vacated the two buildings not damaged by the fire but adversely impacted by the loss of amenities. The court held that notwithstanding the adverse impact of the fire that resulted in vacancies, "there was no 'necessary suspension of operations or tenancy' in Buildings A and B." Id. at 160. Although Mikob's facts were different, the court applied as written the same policy language requiring a "necessary suspension of your 'operations' or of tenancy" to exclude coverage for reduced rental

The analysis in Forestview The Beautiful, Inc. v. All Nation Ins. Co., 704 N.W.2d 773 (Minn. App. 2005), is also instructive. In Forestview, a severe storm damaged a resort, rendering four out of twenty cabins unrentable for the rest of the summer. Id. at 774. The resort continued to rent the remaining cabins and never completely closed as a result of the storm. Id. In nearly identical language to the policy provision here, the resort's business interruption policy provided coverage for "actual loss of Business Income you sustain due to necessary suspension of your 'operations' during the 'period of restoration.'" Id. at 775. Forestview held that "suspension" meant a total cessation of operations, rejecting the resort's argument that the four cabins should be covered under the policy. *See* id. at 775-76 (explaining that the dictionary defines "suspend" as "[t]o cause to stop for a period," and therefore concluding that the plain and ordinary meaning of "suspension" requires a complete cessation of operations rather than a partial one). Here, like Forestview, the Property sustained damage to a portion of its available rental units but remained open continuously; there was therefore no cessation of operations within the meaning of the Policy such as to trigger the business interruption clause.

---

income attributable to the fire where the insured continued to engage in his business activities--although at a diminished level--at the covered property.

11

Moreover, H & H has not presented evidence to raise a fact issue that it was unable to meet customer demand for rooms. *See* Apartment Movers of America, 2005 WL 106477, at *3 (holding that inability to meet customer demand may constitute a "suspension of operations," whereas a business slowdown does not); *see also* Lite, 119 A.D. at 414 (explaining that plaintiff had submitted evidence proving amount of loss by showing that the apartments were all rented before the fire and were readily rented after repairs had been made). H & H does not claim, nor does it submit evidence to show, that it could not fulfill its customers' demand with the inventory of rooms for rent that it had available, or that it ever once had to turn customers away. H & H's "Listing of Occupancy Stats," which is uncontroverted, supports an inference that H & H did in fact have a supply of rooms sufficient to meet the demand; there was no month when H & H had an occupancy rate of over 80% for its available rooms, and during most months it hovered around 60%.[16] Hence, although H & H may have sustained a business slowdown, the uncontroverted summary judgment evidence is that it did not suffer a "necessary suspension of operations" such as to trigger coverage under the business interruption clause of the Policy. Accordingly, Discover is entitled to summary judgment on H & H's business interruption claim.

---

[16] *See* Document No. 26, ex. C at 11 of 22.

IV. <u>Order</u>

Based on the foregoing, it is

ORDERED that Defendant Discover Specialty Insurance Company's Motion for Partial Summary Judgment (Document No. 24) is GRANTED, and H & H shall take nothing on its business interruption claim.

The Clerk will enter this Order and send a copy to all counsel of record.

SIGNED at Houston, Texas on this 20th day of December, 2011.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE